UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAITH NA,<br><br>                      Plaintiff,<br><br>v.<br><br>SIMMONS et al.,<br><br>                      Defendants. | Case No.: 16-CV-592-WQH(WVG)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTIONS FOR APPOINTMENT OF COUNSEL**<br><br>**[ECF Nos. 37, 38 & 44.]** |

      Saith Na, an inmate at Pelican Bay State Prison in Crescent City, California, filed the instant lawsuit under the Civil Rights Act, 42 U.S.C. § 1983, alleging violation of the Eighth Amendment based on the alleged inhumane conditions of his confinement. (ECF No. 21.) Defendants Simmons, Hvizdzak, Aliyev, B.I. Myers, Talamante, Garcia, McHenry and Maul now seek summary judgment on this claim. (ECF No. 38.) Having considered the Motion on the papers submitted, the Court hereby RECOMMENDS that Defendants' Motion for Summary Judgment be DENIED.

      Also pending before the Court are Plaintiff's motions for appointment of counsel. (ECF Nos. 37, 44.) Given the Court's recommendation above, the Court also RECOMMENDS that Plaintiff's motions be GRANTED and pro bono counsel be appointed to represent him.

## I. BACKGROUND

**A.   Plaintiff's Statement of Facts[1]**

In 2015, Plaintiff was housed at the George Bailey Detention Facility in San Diego, California. (*See* FAC at 1.)[2] On April 5, 2015, Plaintiff alleges that he was escorted to "Cell #110" by San Diego Sheriff Deputies.[3] (ECF No. 45, Na Decl. at ¶ 4.) One of those Deputies, Defendant Aliyev, went inside the cell, "dragged out a wet mattress filled with water along with wet linen" and placed the items outside of the cell. (*Id.* at ¶ 5.) Plaintiff alleges that Defendants Garcia, Aliyev, Hvizdzak, and other Deputies "observed that the cell was flooded" and "in inhumane condition." (*Id.* at ¶ 2, 4-7.) Despite the cell's condition, Plaintiff claims Defendant Garcia ordered him to go inside the cell. (*Id.* at ¶ 4.) Plaintiff protested but alleges Garcia told him to "get the fuck inside the cell" while holding out his taser. (*Id.*)

Plaintiff claims that there was "food splattered all over the cell wall," the "water from the toilet bowl was empty," and there was urine and feces near the toilet. (*Id.* at ¶ 2.) Plaintiff alleges he repeatedly asked Defendants Aliyev and Hvizdzak for cleaning supplies when they came by his cell, but they failed to provide any. (*Id.* at ¶ 7.)

That evening, Plaintiff alleges that he "slipped and fell injuring [his] head and lower back." (*Id.* at ¶ 7.) Plaintiff alleges that there was "filth all over [his] back and back of [his] head]" and that he was left lying in "the same wet clothing with filth." (*Id.* at ¶ 7-8.)

Plaintiff claims that he notified Defendants Myers, Talementes, and McHenry of his injuries but they ignored him and left him "to suffer in pain." (*Id.* at ¶ 9.)

---

[1] In a prior Order, the Court dismissed Plaintiff's medical-needs deliberate indifference and excessive force claims. (ECF No. 30.) The sole remaining claim in this matter is now the conditions of confinement claim. The allegations recounted herein relate only to that claim.

[2] Pinpoint citations to pages in documents filed on the Court's docket refer to the page numbers electronically-generated by the CM/ECF system.

[3] All Defendants are alleged to be San Diego County Sheriff Deputies.

Later on that night, Corporal Rodriguez[4] conducted a cell check. (*Id.* at ¶ 11.) Plaintiff alleges that he stopped Corporal Rodriguez, showed him his injuries, the condition of the cell, and the "wet clothes with filth [he] was wearing." (*Id.*) Plaintiff claims that Corporal Rodriguez told Plaintiff that he would have Plaintiff taken to medical. (*Id.*) Plaintiff alleges that he was taken to medical later that night. (*Id.* at ¶ 13.)

When Plaintiff was escorted back from medical, he alleges that he again asked for cleaning supplies but was not provided any. (*Id.* at ¶ 15.) From April 5, 2015 to April 11, 2015, Plaintiff alleges that he requested cleaning supplies every day, but Defendants failed to provide them. (*Id.* at ¶ 19.)

Plaintiff claims that as a result of conditions in his cell, "insects started coming into the cell" and crawling on him while he "was asleep on top bunk." (*Id.* at ¶ 19.) Plaintiff alleges that he showed these insects to Defendant Simmons, and Simmons told Plaintiff that he would have his Deputies bring cleaning supplies. (*Id.*) Plaintiff claims this was never done and "wrote a grievance on Defendant Simmons." (*Id.* at ¶ 21-22.)

The next day, Plaintiff spoke to Lieutenant Kania[5] regarding the condition of the cell. (*Id.*) Plaintiff alleges Kania had his celled cleaned and no insects returned. (*Id.* at ¶ 24.)

## B. Defendants' Statement of the Facts

Defendants' Motion and attached Declarations provide an explanation of the incidents from April 5, 2015 to April 11, 2015, which is contrary to Plaintiff's account.

Plaintiff was brought to Cell #110 by Defendants at about 3:00 p.m. (Exhibit A – Aliyev Decl. at ¶ 2.) An inmate had "clogged the sink, and perhaps the toilet," earlier that day, causing "water to overflow." (Aliyev Decl. at ¶ 2; Exhibit C – Hvizdzak Decl. at ¶ 2.) The water in the cell had been shut off, and the inmate had been placed in another holding area. (Hvizdzak Decl. at ¶ 2.) Defendants have submitted declarations stating that they "do

---

[4] Corporal Rodriguez is not a Defendant in this case.

[5] Lieutenant Kania is not a Defendant in this case.

not recall," "do not remember," or had "no memory" of seeing "standing puddles," seeing or smelling "filth," or perceiving any physical safety issues in the cell. (Aliyev Decl. at ¶ 2; Exhibit B – Garcia Decl. at ¶ 2; Hvizdzak Decl. at ¶¶ 3, 5; Exhibit D – Myers Decl. at ¶ 2; Exhibit E – Talamantes Decl. at ¶¶ 3, 4; Exhibit G – Maul Decl. at ¶ 2; Exhibit H – Simmons Decl. at ¶ 2.) Defendants further allege the same with respect to denying Plaintiff cleaning supplies. (Aliyev Decl. at ¶ 7; Garcia Decl. at ¶ 3; Hvizdzak Decl. at ¶ 8; Maul Decl. at ¶ 3; Simmons Decl. at ¶ 3.) Nor do they recall denying Plaintiff medical assistance. (Myers Decl. at ¶¶ 3-4; Talamantes Decl. at ¶¶ 2-3; Exhibit F – McHenry Decl. at ¶ 3.)

## II. DISCUSSION

### A. Legal Standard: Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) mandates the grant of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for the granting of a directed verdict. Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). But "[i]f reasonable minds could differ," judgment should not be entered in favor of the moving party. *Id.* at 251; *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007) ("If a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied.") (alteration omitted).

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to their case. *Anderson*, 477 U.S. at 252; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Lack of genuine issues of material fact on a single element of a claim for relief is sufficient to warrant summary judgment on that claim. *Celotex Corp.*, 477 U.S. at 322-23.

The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, and "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325;

*see also* Fed. R. Civ. P. 56(c). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the nonmoving party to establish beyond the pleadings, that there is a genuine dispute for trial. *Celotex Corp.*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiffs' favor, could convince a reasonable jury to find for the plaintiff." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Rule 56; *Celotex Corp.*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.  Defendants Are Not Entitled To Summary Judgment On Plaintiff's Eighth Amendment Claim**

The Eighth Amendment protects prisoners from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). To prevail on a conditions of confinement claim, a prisoner must establish that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

**1.  Objective Prong: Substantial Risk of Harm**

Prison officials must ensure that prisoners have adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson*, 217 F.3d at 731. To determine whether a particular deprivation violates the Eighth Amendment, the Court must examine the "circumstances, nature, and duration of [the] deprivation." *Id.* Such a determination is

highly fact-specific. *Lamb v. Howe*, 677 Fed. Appx. 204, 209 (6th Cir. 2017); *see also Johnson*, 217 F.3d at 731.

The Ninth Circuit proscribes the subjection of a prisoner to a lack of sanitation that is "severe and prolonged." *Anderson v. County of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995). The failure to provide adequate cleaning supplies to inmates may amount to a violation of the Eighth Amendment. *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985). In *Hoptowit*, the court found that, in light of a failing plumbing system, vermin infestation, and inadequate ventilation, the "failure to provide adequate cell cleaning supplies" deprived "inmates of tools necessary to maintain minimally sanitary cells" which "amounts to a violation of the Eighth Amendment." *Id.*

In *Johnson v. Lewis*, 217 F.3d 726 (9th Cir. 2000), inmates were confined to a yard for four days in 94-degree heat, with insufficient access to toilets, inedible food, and insufficient amounts of water. *Id.* at 729-32. The Ninth Circuit reversed summary judgment because the inmates' evidence, if believed, sufficed to create a triable issue as to whether the inmates' deprivations were "sufficiently serious to satisfy the objective component of an Eighth Amendment claim." *Id.* at 732.

By contrast, the short-term deprivation of bathroom facilities, without more, is insufficiently grave to form the basis of an Eighth Amendment violation. *See, e.g.*, *Anderson*, 45 F.3d at 1314. In *Anderson*, prison officials routinely confined violent and suicidal inmates to a "safety cell" for short periods of time which had a "pit toilet . . . encrusted with excrement and urine." *Id.* at 1313. The court in *Anderson* indicated that lack of a sanitary toilet for a night, combined with nothing else, does not support a conditions of confinement claim. *Id.* at 1313-14.

Similarly, the plaintiff in *Oubichon v. Carey*, 2017 U.S. Dist. LEXIS 75378 (E.D. Cal. May 16, 2017) (unpublished) alleged a lack of access to a sanitary toilet for one night due to a riot. *Id.* at *17. The court granted summary judgment because the plaintiff did not

submit evidence of serious health hazards, such as prolonged duration, pest infestations or extreme heat. *Id.* at *20. Rather, the crux was that he slipped and fell. *Id.*

Other cases have held that inoperable toilets causing flooding may violate the Eighth Amendment if the unsanitary condition persists for several days. In *Despain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001), 36 hours without working toilets and concomitant exposure to other inmates' urine and feces was sufficiently serious to state a conditions of confinement claim. *Id.* at 974-75. In *Arellano v. Ojeda*, 660 Fed. Appx. 552 (9th Cir. 2016) (unpublished), the court found a cognizable claim where the plaintiff alleged the toilet in solitary confinement overflowed for several days and defendants failed to address it. *Id.*

Defendants minimize the nature of Plaintiff's allegations and argue that, just as in *Oubichon*, this case is nothing more than a simple slip-and-fall case and that, without more, Plaintiff cannot establish the "objective" prong of a conditions of confinement claim at trial. However, the glaring problem with Defendants' motion is this misguided starting point. The logical fallacy in their argument begins when they characterize Plaintiff's case as a simple slip-and-fall case and then proceed to attack that incorrect characterization. Thus, all of the simple slip-and-fall cases they rely on are distinguishable from this case. Plaintiff complains about prolonged exposure to standing water that contained urine, feces, and food debris while his multiple requests for cleaning supplies and complaints about the cell's conditions went ignored. Plaintiff's slip-and-fall is just one additional consequence of the apparent unsanitary and unsafe conditions of his confinement. He further contends he fell and became covered by some or all of these substances and continued to be covered by them. Plaintiff's allegations are of serious health hazards and substandard living conditions that, if believed, could lead a reasonable jury to find in Plaintiff's favor.[6]

---

[6] The distinction between simple slip-and-fall cases and this case is prudent, but as indicated misses the mark in this case. It would indeed seem improper and unjust to hold prison officials liable for serious constitutional violations based on momentary or temporary conditions about which they did not have knowledge or no realistic opportunity to remediate. Such inequity, however, diminishes when prison officials place an inmate

Moreover, Defendants have not presented evidence that conclusively—or even minimally—vitiates the evidence contained in Plaintiff's declaration. By only presenting equivocal testimonial evidence, all Defendants have done is create a dispute of material fact. The evidence is not so one sided that the trier of fact would have no choice but to decide one way or the other. Inconclusive and noncommittal statements made by Defendants, such as "I can't recall," do not necessitate the conclusion that the unsanitary conditions did not exist. Such qualified language is not forceful or particularly confidence-inspiring, and it is wholly possible a jury would not give it much, or any, weight. A jury, hearing Plaintiff's unqualified version of events describing a filth-filled cell, would then hear Defendants' "I can't recall," "I do not remember," "I have no memory"[7] testimony and determine which version of events to believe. That analysis requires precisely the type of witness credibility determination that is within the ambit of the jury—not this Court on summary judgment.

---

inside a cell that had been recently flooded and was still wet—as several Defendants admit was the case here—and then proceed to ignore the inmate's pleas and complaints about unsanitary conditions for a prolonged period of time—as Plaintiff's declaration evidences.

[7] The salient point is that these phrases could be interpreted in different ways. They could mean that the declarant has no present memory of the conditions of the cell. Or they could mean that the declarant remembers the conditions of the cell, but the conditions were not as Plaintiff describes. The Court is simply not equipped to resolve this ambiguity on a cold record. This ambiguity, of course, is the result of the declarations' drafter's poor use of imprecise language that could be interpreted in materially divergent ways. The drafter simply could have used definitive language such as, for example, "The cell did not contain any large puddles," (*cf.* Aliyev Decl. at ¶ 3 ("I do not recall any large puddles in the cell.")) or "There was no standing water in the cell at the time Na was placed there," (*cf.* Hvizdzak Decl. at ¶ 5 ("I do not remember seeing any standing water in the cell at the time Na was placed there")). A jury—based on the witnesses' demeanor, tone of voice, or clarifying follow-up questions—could find that Defendants do not presently remember the condition of the cell. Or the jury could find that Defendants remember that the cell contained no standing water. Given the state of evidence before the Court, it would be most appropriate for a jury to resolve the ambiguity that pervades Defendants' declarations.

Because finding in Defendants' favor would require a credibility determination and disregarding competent evidence presented by Plaintiff, a genuine issue of material fact regarding the conditions of Cell #110 exists. Accordingly, judgment should not be entered in favor of Defendants.

### 2. Subjective Prong: Deliberate Indifference

To establish deliberate indifference, a plaintiff must prove that "the official knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Whether an official possessed such knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842.

While the failure to give advance notice is not dispositive, if the trier of fact believes the plaintiff informed officers of the conditions and interprets their response as reflecting a conscious disregard of the plaintiff's needs and rights, an Eighth Amendment violation could be found. *See id.* at 848. In *Torres v. Arellano*, 2017 U.S. Dist. LEXIS 43555 (E.D. Cal. Mar. 24, 2017), the plaintiff alleged that he told the defendant officer about his urine and bloodstained bed while the defendant claimed he could not recall learning of the knowledge. *Id.* at *17. The court found a trier of fact might believe the plaintiff, the defendant's lack of action might be interpreted as conscious disregard, and thus summary judgment could not be granted. *Id.*

Prison officials who know of a substantial risk to inmate health may be free from liability if they respond to the risk in a reasonable manner, even if the harm is not averted. *Farmer*, 511 U.S. at 844. In *Oubichon*, while the plaintiff alleged he told the defendants about the unsanitary toilet, the condition arose in the midst of two riots. *Oubichon v. Carey*, 2017 U.S. Dist. LEXIS 75378, at *18 (E.D. Cal. May 16, 2017). The court concluded the one day exposure to an unsanitary toilet did not amount to deliberate indifference because it was necessary for prison officials to focus on inmate safety in the face of riots and lasted only as long as was needed to restore order. *Id.* at *20.

Defendants argue that, even if Plaintiff can show objectively inhumane prison conditions existed, he cannot show that Defendants knew of and disregarded any excessive risks to health and safety. *See Farmer*, 511 U.S. at 834, 837. Specifically, Defendants argue that because they have alleged that they do not recall any threats to Plaintiff's safety other than a wet floor, Plaintiff cannot prove that Defendants were deliberately indifferent to an excessive health risk. (*See* Def's Mot. at 8-9.) This argument is unpersuasive. Plaintiff has submitted his own testimony that each of the Defendants were made aware of the conditions of the cell, they were aware of the urine and feces near the toilet and insect infestation of his cell, that they were aware that he asked for cleaning supplies, they either denied or ignored the requests, and that they were aware that his clothes were wet and soiled. A reasonable jury, crediting Plaintiff's testimony, could find in his favor. And for the same reasons explained above, Defendants' declarations simply highlight the existence of genuine issues of material fact. Given that the only evidence is testimony presented by both sides, a credibility determination is required. A reasonable jury could find an Eighth Amendment violation if it believes Defendants knew about the conditions of Plaintiff's cell and interprets their responses (or the lack thereof) as demonstrating a conscious disregard of Plaintiff's needs and rights. At this stage in the proceedings, with all reasonable inferences made in the Plaintiff's favor, the Court cannot conclude that a reasonable jury could not find for Plaintiff.

Even if Defendants' declarations were not equivocally phrased and they had all definitively testified, as they argue in their reply brief, that "all five of the Defendants present on the day of Plaintiff's transfer have stated they did not observe anything leading them to believe the cell was in an unsafe condition," (ECF No. 46 at 2), this still would not entitle them to judgment as a matter of law. By relying on their declarations and ignoring Plaintiff's declaration, Defendants ask this Court to make the type of credibility determination that it cannot make as this stage without some indication that Plaintiff's declaration is untrustworthy. But they presented no reason to discount the credibility of Plaintiff's declaration. The fact that their version of events conflicts with Plaintiff's version

is not a valid reason to discount credibility as a matter of law and disregard his declaration *in toto*. For example, there is no deposition testimony where Plaintiff contradicts anything in this declaration. Such evidence perhaps could have allowed the Court to discount Plaintiff's declaration. However, there is no basis before the Court to do such a thing. Ultimately, all Defendants have done here is highlight the fact that this case truly is a matter of he-said-they-said, and the jury should determine which version is worthy of belief.

Defendants also contend negligence is an insufficient basis for an Eighth Amendment violation. (ECF No. 38-2 at 8.) In doing so, they again mischaracterize Plaintiff's allegations and then attack that strawman.[8] Plaintiff's case is not simply about his cell being wet and his fall as a result. He further claims his cell contained urine, feces, and food debris. He further contends he fell into these substances and was left in that condition. Defendants contend Plaintiff cannot prove they knew about the alleged conditions of his cell. However, he certainly can so prove if a jury believes his version of events that he made each Defendant aware of the conditions of the cell. Again, what this case comes down to is a battle of vastly different testimony—only one of which can be true. Given that Defendants have provided the Court no reason to believe Plaintiff's testimony is false (their own self-serving testimony does not prove such falsity), that determination is for the jury to make.

## C. Plaintiff's Motions for Appointment of Counsel

Plaintiff moves for appointment of counsel because he contends the case is complex, he has limited knowledge of the law, he is unable to afford an attorney, and he has had difficulty obtaining discovery.[9] Based on the Court's recommendations above, this case

---

[8] For example, they state: "While it is not ideal to have damp or wet floors . . . ." (ECF No. 38-2 at 9.) Plaintiff's complaints *begin* with these allegations; they do not *end* there. And Plaintiff's allegations certainly go beyond "damp" floors.

[9] Plaintiff states he has spoken to CJA panel attorney David Zugman, who agreed to take Plaintiff's case. However, while Plaintiff communicated with Mr. Zugman, counsel made no commitment to represent him. Although Mr. Zugman would not mind handling the case,

will proceed to trial if the District Judge agrees and the case does not settle. Because pro bono counsel would assist Plaintiff with trial-related matters and assist the efficient presentation of the case to a jury, this Court recommends appointment of counsel.

"There is no constitutional right to appointed counsel in a § 1983 action." *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (partially overruled en banc on other grounds). Thus, federal courts do not have the authority "to make coercive appointments of counsel." *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 310 (1989); *see also United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 569 (9th Cir. 1995).

District courts do have discretion, however, pursuant to 28 U.S.C. section 1915(e)(1), to request that an attorney represent indigent civil litigants upon a showing of exceptional circumstances. *See Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). "A finding of the exceptional circumstances of the plaintiff seeking assistance requires at least an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'" *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)); *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

Here, given that Plaintiff has successfully demonstrated that a genuine dispute of material fact exists for trial, appointment of counsel is appropriate. Based on the evidence submitted to the Court, a jury very well could credit Plaintiff's account of events and find in his favor. Thus, there is a likelihood that Plaintiff could succeed on the merits. Additionally, given Plaintiff's status as a prisoner and the myriad limitations imposed on him as a result of that status, appointment of pro bono counsel would significantly assist him in the presentation of his case to a jury as well as facilitate the efficient use of the Court's time and resources. The Court should therefore exercise its discretion and appoint Plaintiff pro bono counsel.

---

he does not believe it would be appropriate to circumvent the normal, random attorney appointment process and assign the matter directly to him.

### III. CONCLUSION

Based on the foregoing, this Court respectfully RECOMMENDS that Defendants' summary judgment motion (ECF No. 38) be DENIED in its entirety.

This Court further RECOMMENDS that Plaintiffs' motions for appointment of counsel (ECF Nos. 37, 44) be GRANTED.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

**IT IS ORDERED** that no later than November 3, 2017, any party to this action may file written objection with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the court and served on all parties no later than December 1, 2017. The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on the appeal.

**IT IS SO ORDERED.**

DATED: October 17, 2017

Hon. William V. Gallo
United States Magistrate Judge