UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAITH NA,

Plaintiff,

v.

NICHOLAS HVIZDZAK; EMIN
ALIYEV; BYRON MYERS;
AUDEL TALAMANTES;
LAUSET GARCIA; MICHAEL
MCHENRY; TIMOTHY
SIMMONS; and OCTAVIO
MAUL,

Defendants.

Case No.:  16cv592-WQH-WVG

**ORDER**

HAYES, Judge:

The matters before the Court are the motion for summary judgment filed by Defendants (ECF No. 38), the motions for appointment of counsel filed by Plaintiff (ECF Nos. 37, 44), the Report and Recommendation of the Magistrate Judge (ECF No. 51), and the objections to the Report and Recommendation filed by Defendants (ECF No. 52).

## I.    BACKGROUND

On March 7, 2016, Plaintiff Saith Na, a prisoner at Pelican Bay State Prison, proceeding pro se and in forma pauperis, is proceeding in this action with a First Amended Complaint ("FAC") filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983.  (ECF No.

21).  Plaintiff brought this action against Defendants Simmons, Hvizdzak, Aliyev, Myers, Talamante, Garcia, McHenry, and Maul, who are employed at the George Bailey Detention Center.  Plaintiff alleged an Eighth Amendment conditions of confinement claim, an Eighth Amendment inadequate medical care claim, and an Eighth Amendment excessive force claim arising from the alleged inhumane condition of his cell for five days in April 2015 when Plaintiff was housed at the George Bailey Detention Center.  *Id.*

On January 31, 2017, the Court granted in part and denied in part a motion to dismiss for failure to state a claim filed by Defendants.  (ECF No. 30).  The Court granted the motion to dismiss the Eighth Amendment claims based on inadequate medical care and excessive force and denied the motion to dismiss the Eighth Amendment claim based on conditions of confinement.  *Id.*  Plaintiff is proceeding on this remaining claim.

On February 13, 2017, Defendants filed an Answer.  (ECF No. 32).

On June 6, 2017, Plaintiff filed a motion to appoint counsel.  (ECF No. 37).

On June 28, 2017, Defendants filed a motion for summary judgment.  (ECF No. 38).

On July 21, 2017, Plaintiff filed a second motion to appoint counsel.  (ECF No. 44).

On August 11, 2017, Plaintiff filed a response in opposition to the motion for summary judgment.  (ECF No. 45).

On August 22, 2017, Defendants filed a reply in support of their motion for summary judgment.  (ECF No. 30).

On October 17, 2017, the Magistrate Judge issued a Report and Recommendation which recommends that the Court deny the motion for summary judgment and grant the motions to appoint counsel.  (ECF No. 51).

On November 2, 2017, Defendants filed objections to the Report and Recommendation.  (ECF No. 52).

## II.  FACTS

Plaintiff Saith Na provides a declaration stating that Defendants "[were] aware that the inmate prior to my arrival had caused water to be on the floor, that the water from the

16cv592-WQH-WVG

toilet bowl was empty, there were urine, feces near the toilet, and food splattered all over the cell wall." (Na Decl., ECF No. 45 at 5).

3. The Defendants was aware before Plaintiff was place in the cell, the prior inmate was trying to flood the cell, or was flooding the cell that Defendant Hvizdzak had to shut off the water.

4. On April 5, 2015, when I was escorted by Defendant Garcia, the cell was so bad that I had objected to being housed in that cell due to the condition but in retaliation for refusing to lock down, Defendant Garcia took out his taser threateningly and ordered to Plaintiff to "Get . . . inside the cell."

5. Prior to being placed in cell #110 on 04/05/2015 Defendant Aliyev went inside the cell and dragged out a wet mattress filled with water along wet linen and placed it outside the cell.

6. When I was placed in that cell (#110), I was not given a bed roll, a mattress, nor cleaning supplies. The cell was left in that condition.

7. I asked Defendant Aliyev & Defendant Hvizdzak for cleaning supplies and bedroll and complained about the cell from 3:00 pm – 6:00 pm everytime they walked. They failed to do so which led to my injuries. I slipped and fell injuring my head and lower back and there were filth all over my back and back of my head and till this very day I've been suffering from the injuries.

8. I was left in the same wet clothing with filth. The Defendants did not provide with clean set of clothes.

9. I notify the Defendants McHenry, Talamentes, Myers of my injuries and told them that it was an emergency & I had went unconscious. In retaliation, they ignored me and left me to suffer in pain.

10. Each time they walked for the security checks, I complained and notify the Defendants, Myers, Talamentes, that I needed medical attentions, that it was an emergency but I was ignored.

11. Around 11:30 PM Corporal Rodriguez had conducted a cell check. I stopped him, showed him my injuries, the condition of the cell, the wet clothes w/filth I was wearing and he told me he'll get me to medical.

12. Corporal Rodriguez then told Talamentes that I was going to medical.

13. At around 12:00 I was escorted by the floor officers to medical.

…

15. When I was escorted back by the floor officers, I told Defendant Talamentes that I need – bedroll, cleaning supplies, and another set of clothing.

16. The defendants, Myers and Talamentes, gave me a bed roll and a mattress but did nothing about cleaning the cell when I asked for cleaning supplies and put me back in the same inhumane cell, knowing I had slipped and fell in that cell, knowing I had slipped and fell in that cell and knowing the conditions.

17.  I was placed back in the same filthy cell. The same cell I had slipped and fell in due to the conditions.

18.  After I was brought back to the same cell, I was left in the same filthy clothes, same inhumane cell, and every day I complained about the cell, asking for cleaning supplies. I was not given any.

19.  Days later from 04/05/2015 – 04/11/2015 I was left in the cell with no assistance to my cleaning supplies I had requested from the officers. On 04/10/2015 insects started coming in to the cell because of the filthy smell and started crawling on me while I was asleep on the top bunk.

20.  I captured some insects and showed it to Sgt. Simmons and explained to him of the incident and the condition of the cell.  He said he'll have his deputies bring me cleaning supplies.

21.  I was never given any cleaning supplies.

22.  The next day 04/11/15 Lt. Kania came to my door because I wrote a grievance on Defendant Simmons and complained about the cell and insects.

23.  I explained to Lt. Kania of the incident and showed Lt. Kania the insects, Lt. Kania ask if he can flush the insects I captured. I said it was okay.

24.  Lt. Kania sent me to the yard and had my cell cleaned. After the cell was cleaned there were no more insects.

…

28.  Contrary to defendants affidavits, the defendants knew the condition of the cell, knew that an inmate was flooding the cell prior to my arrival. I objected to be housed in that cell due to the conditions I observed thats how bad it was. It was that bad when I objected before entering that cell because it wasn't safe.  Otherwise I wouldn't objected to being housed in that cell.

(Na Decl., ECF No. 45 at 5–9).

Defendant Emin Aliyev provides a declaration stating that he was "aware the inmate in Cell #110 had caused water to be on the floor of the cell" on April 5, 2015 because he had assisted moving the prior inmate from the cell that day.  (Aliyev Decl., ECF No. 38–4 at 4).  Aliyev states, "A wet mattress had been removed from the cell, I do not recall if or when a new mattress was brought. I do not recall any large puddles in the cell. I had no reason to believe the cell would be unsafe for Na." *Id.*  Aliyev states that he was standing by the cell when Plaintiff was brought in Cell #110 in House 6 at around 3:00 p.m. but then returned to assist in House 4 and left work around 6:00 pm and did not work for the next

five days.  (Aliyev Decl., ECF No. 38-4 at 5).  Aliyev states that he does not recall Plaintiff Na asking for cleaning supplies.  *Id.*

Defendant Lauset Garcia provides a declaration stating, that on April 5, 2015,

> There was a lock-down in House 4 and to assist I escorted Plaintiff Na from House 4 to House 6, Cell #110. I do not recall the exact condition of Cell #110 but if I had observed feces in the cell I would not have put him there. I do not remember thinking that the cell was unsafe or dangerous. . . . I then returned to continue assisting in House 4. I did not return to House 6 and I got off work at around 6:00 p.m.  I had no further contact with Na in the following week. I do not recall Na ever asking me for cleaning supplies in Cell #110.

(Garcia Decl., ECF No. 38-4 at 7).

Defendant Nicholas Hvizdzak provides a declaration stating that,

> I am aware the inmate in Cell #110 had caused water to be on the floor of the cell that day.  I had shut off the water to Cell #110 in response. I assisted in removing him from the cell prior to Plaintiff Na's arrival. . . . I believe all of the overflowing water was clean and I have no memory that it smelled or looked like it contained urine or feces. I had no reason to believe the cell would be unsafe for Na.

(Hvizdzak Decl., ECF No. 38-4 at 10).  Hvizdzak further states,

> Na was placed in Cell #110 at around 3:00 p.m. I do not remember seeing any standing water in the cell at the time Na was placed there. . . . At around 4:00 p.m., I turned the water back on in Cell #110 in response to Na's request made either to myself or relayed through another deputy. . . .  I got off work around 6:00 p.m.  I do not recall Na ever asking me for cleaning supplies in Cell #110.

*Id.* at 11.

Defendant Byron Myers provides a declaration stating that on April 5, 2015,

> On the times I looked at his cell, I do not recall seeing that the floor was wet. I do not recall anything about the cell being outside the ordinary.  I had no reason to believe the cell was unsafe.  . . . I conducted several hourly cell-checks that night.  As I passed his cell at approximately 12:00 a.m., Na informed me that he wanted emergency medical attention.  I escorted him to medical, waited while he was evaluated, and escorted him back to the cell. . . . . I never heard Na complaint that the cell was wet.  He did not object to being returned to the cell after the medical visit.

(Myers Decl., ECF No. 38-4 at 13–14).

Defendant Talamantes provides a declaration stating that,

> At approximately 11:45 p.m., I escorted Na to medical, waited while he was evaluated and escorted him back to the cell. I do not remember Na being wet. I do not remember noticing that the cell was wet or dirty. At no time did I hear Na complain about the condition of his cell. . . . I do not believe Na made any objections to being returned to the cell after the medical visit. I do not remember having any concerns about his cell when I returned him to it.

(Talamantes Decl., ECF No. 38-4 at 16–17).

Defendant McHenry provides a declaration stating that he was working at George Bailey Detention Facility, House 6, as the Control Deputy on April 5, 2015. McHenry states:

> 2. Each cell in the Houses has an emergency call button, which an inmate can depress to talk to a deputy in the House's Control Tower. When an inmate depresses the button, a control panel light illuminates in the Tower. The deputy in the Control Tower must see the light, then depress a button before he can hear what the inmate is saying. The deputy must depress a separate button for the inmate to hear what the deputy says.
> 3. I do not recall having any conversations with Plaintiff Na on the evening of April 5, 2015. I am not aware of any reason Na could not have requested contact with the Tower from Cell #110, waited, and received a response from the Tower from either myself or another deputy in my place. I did not walk the floor and did not look into Cell #110 to observe its condition.

(McHenry Decl., ECF No. 38-4 at 19–20).

Defendant Maul provides a declaration stating that he worked as a Floor Deputy at George Bailey Detention Facility in April 2015 and worked six days between April 5, 2015 and April 15, 2015. Maul states that he does "not recall any interactions with Na during this time" and is "not aware of any reason cleaning supplies would not have been taken to Na if he had requested them." (Maul Decl., ECF No. 38-4 at 22). Maul states, "I do not recall the condition of Cell #110 during that time. I never believed Na was in an unsafe cell." *Id.* at 23.

Defendant Simmons provides a declaration stating,

Between April 5 and April 15, 2015, I walked by Cell #110 in House 6 two times. I do not recall the condition of Cell #110 during these weeks, but I had no reason to believe the cell was unsafe. . . . I do not recall any interactions with Plaintiff Na during that time. I never had a conversation with Na about insects inside his cell. I am not aware of any reason cleaning supplies would not have been taken to Na if he had requested them.

(Simmons Decl., ECF No. 38-4 at 25–26).

## III. LEGAL STANDARD ON REPORT AND RECOMMENDATION

The duties of the district court in connection with a report and recommendation of a magistrate judge are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b). The district judge must "make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b). The district court need not review de novo those portions of a Report and Recommendation to which neither party objects. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("Neither the Constitution nor the [Federal Magistrates Act] requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct.").

## IV. MOTION FOR SUMMARY JUDGMENT (ECF No. 38)

Defendants moved for summary judgment on the grounds that the conditions of Plaintiff's cell did not rise to the level of an Eighth Amendment violation. In the Report and Recommendation, the Magistrate Judge concluded that none of the Defendants were entitled to summary judgment. The Magistrate Judge concluded that a genuine issue of material fact existed with respect to the conditions of Cell #110. (ECF No. 51 at 9). With respect to the Defendants' knowledge of the conditions of the cell, the Magistrate Judge concluded that Plaintiff could prove that Defendants knew about the alleged conditions of the cell "if a jury believes [Plaintiff's] version of events that he made each Defendant aware of the conditions of his cell." *Id.* at 11.

7

On November 2, 2017, Defendants filed objections to the Report and Recommendation. Defendants contend that no reasonable jury would find that the conditions of the cell constituted cruel and unusual punishment. Defendants further contend that Plaintiff cannot prove that each Defendant knew of and disregarded an excessive risk to Plaintiff. Defendants contend that Plaintiff fails to establish that each moving Defendant drew the required inference that a substantial risk of serious harm existed. (ECF No. 52). The record reflects that Plaintiff did not file any reply to the objections.

Upon review, the Court declines to adopt the Report and Recommendation with respect to the motion for summary judgment.

**A. Standard on Motion for Summary Judgment**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is "material" if it may affect the outcome of the case. *See id.* at 248. The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-

moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997); *Liston v. County of Riverside*, 120 F.3d 965, 977 (9th Cir. 1997) ("For the purposes of summary judgment, . . . we must assume the nonmoving party's version of the facts to be correct.") (citation omitted).

### B. Legal Standard on Eighth Amendment Conditions of Confinement Claim

A prison official violates the Eighth Amendment for a deprivation of humane conditions of confinement where two requirements are satisfied. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997). Prison conditions are not objectively serious unless they amount to "unquestioned and serious deprivations of basic human needs," or of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson*, 501 U.S. at 298–300. "[A]fter incarceration only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment." *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "[A]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quotations omitted).

Plaintiff must also establish that "the officials involved acted with 'deliberate indifference' to [his] health or safety." *Id.* at 738. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that [the inmate faces] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"The Eighth Amendment does not tolerate prison officials' deliberate indifference, in the absence of exigent circumstances, to substantial deprivations of adequate shelter, food, drinking water, and sanitation." *Johnson v. Lewis*, 217 F.3d 726, 735 (9th Cir. 2000).

9

Courts must consider the "circumstances, nature, and duration of a deprivation of these necessities . . . in determining whether a violation has occurred." *Id.* at 731. "More modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy and ongoing." *Id.* at 732; *see also Hutto v. Finney*, 437 U.S. 678, 686–87 ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration.'"). "[S]ubjection of a prisoner to lack of sanitation that it severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cty of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995), opinion amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995). Under some circumstances, the "[f]ailure to provide adequate cell cleaning supplies . . . deprives inmates of tools necessary to maintain minimally sanitary cells, seriously threatens their health, and amounts to a violation of the Eighth Amendment." *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985); *see also Arellano v. Ojeda*, 660 Fed. App'x 552, 552 (9th Cir. 2016) (reversing a district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim where a prisoner alleged "that the toilet in his solitary confinement cell clogged and overflowed for a period of several days, and defendants failed to adequately address the sanitation issue, thereby exhibiting deliberate indifference.").

## C. Discussion

Plaintiff provides a declaration stating that he was housed in a cell for five days in which there was water on the floor, urine and feces near the toilet, and food splattered all over the wall. Plaintiff's declaration further states that despite repeated requests he was denied cleaning supplies for this time period. Defendants provide declarations stating that they "had no reason to believe the cell would be unsafe" (Aliyev Decl., ECF No. 38-4

Garcia Decl., ECF No. 38-4 at 7; Hvizdzak Decl., ECF No. 38-4 at 10; Myers Decl., ECF No. 38-4 at 13) or did not recall having concerns that the cell was unsafe (Talamantes Decl., ECF No. 38-4 at 17; Maul Decl., ECF No. 38-4 at 23; Simmons Decl., ECF No. 38-4 at 25). A failure to provide adequate cleaning supplies when cell conditions are sufficiently unsanitary can constitute an Eighth Amendment violation where the conditions last for several days. *See Hoptowit*, 753 F.2d at 784; *see also Arellano*, 660 Fed. App'x at 552. The Court concludes that Plaintiff has raised a disputed issue of fact with respect to whether the condition of his confinement was a sufficiently serious deprivation such as to constitute a constitutional violation.

However, in order to prove an Eighth Amendment violation, Plaintiff must additionally prove that each Defendant acted with deliberate indifference to those conditions by establishing that each Defendant "kn[ew] that the [inmate faced] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. To avoid summary judgment in this instance, Plaintiff must provide evidence sufficient to raise a disputed issue of material fact with respect to the deliberate indifference of each Defendant. *See id.* at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

### A. Defendants Garcia, Aliyev, and Hvizdzak

There is evidence in the record to support a conclusion that Defendants Garcia, Aliyev, and Hvizdzak were aware of the conditions of the cell on April 5, 2015, the first day Plaintiff was brought to the cell. Plaintiff was brought to cell #110 in House 6 on April 5, 2015 at around 3:00 p.m. Plaintiff provides a declaration stating that Garcia escorted him to the cell and ordered him into the cell despite Plaintiff's objections to the conditions of the cell. (ECF No. 45). Plaintiff's declaration states that Defendant Aliyev went into the cell on April 5, 2015 to drag the wet mattress and wet linen out of the cell. Plaintiff

states that he requested cleaning supplies from Defendant Aliyev. Plaintiff's declaration states that he complained about the conditions of the cell and requested cleaning supplies from Defendant Hvizdzvak. (ECF No. 45). However, Defendant Aliyev states that he returned to House 4 after Plaintiff was placed in the cell, left work around 6:00 p.m. that day, and did not return to work for the next five days. (Aliyev Decl., ECF No. 38-4 at 5). Defendant Garcia states that he returned to House 4 after escorting Plaintiff to the cell, left work around 6:00 p.m., and had no further contact with Plaintiff the following week. (Garcia Decl., ECF No. 38-4 at 8). Defendant Hvizdzvak states that he left work around 6:00 p.m. on April 5, 2015 and does not recall Na ever asking him for cleaning supplies. (Hvizdzak Decl., ECF No. 38-4 at 11). Plaintiff does not provide any evidence to establish that these three Defendants had any further contact with Plaintiff or returned to Plaintiff's cell after 6:00 p.m. on April 15, 2015. Viewed in the light most favorable to Plaintiff, there is no evidence to demonstrate that these Defendants were aware of Plaintiff's exposure to the alleged unsanitary cell for a period of longer than a few hours. Based on this limited period of time, the Court concludes that no reasonable jury could conclude that Defendants Garcia, Aliyev, and Hvizdzak "kn[ew] that [Plaintiff faced] a substantial risk of serious harm." *Farmer*, 511 U.S. at 847; *see also Johnson*, 217 F.3d at 731 (instructing courts to consider the "circumstances, nature, and duration" of a deprivation); *Arellano*, 660 Fed. App'x at 552.

## B. Defendants Myers and Talamantes

With respect to Defendants Myers and Talamantes, Plaintiff's declaration states that they escorted him back to his "inhumane cell" from medical on the evening of April 5, 2015 or early morning of April 6, 2015 and "did nothing about cleaning the cell when [he] asked for cleaning supplies." (ECF No. 45 at 7). Plaintiff provides no evidence that Defendants Myers and Talamantes had any further contact with Plaintiff or returned to Plaintiff's cell. Viewed in the light most favorable to Plaintiff, there is no evidence to demonstrate that Defendants Myers and Talamantes were aware of Plaintiff's exposure to the alleged unsanitary cell for longer than a day. Based on this brief amount of time, the

Court concludes that no reasonable jury could conclude that Defendants Myers and Talamantes "kn[ew] that [Plaintiff faced] a substantial risk of serious harm." *Farmer*, 511 U.S. at 847.

### C. Defendant Simmons

With respect to Defendant Simmons, Plaintiff's declaration states that he explained the conditions of the cell and showed some insects present in his cell to Defendant Simmons on April 10, 2015. Plaintiff states that Defendant Simmons stated that he would have his deputies bring cleaning supplies. Plaintiff states that he was never provided cleaning supplies; however, Plaintiff states that his cell was cleaned the next day. (ECF No. 45 at 9–10). Based on the declaration provided by Plaintiff and viewed in the light most favorable to Plaintiff, Defendant Simmons was first made aware of the conditions of the cell on April 10, 2015 and the cell was cleaned one day later on April 11, 2015. The Court concludes that Plaintiff cannot establish that Defendant Simmons failed to take "reasonable measures to abate" any harm where the undisputed facts demonstrate that the cell was cleaned one day after Defendant Simmons was made aware of its alleged unsanitary conditions. *Farmer*, 511 U.S. at 847.

### D. Defendant Maul

Plaintiff does not provide any evidence that Defendant Maul was aware of the conditions of Plaintiff's cell. Defendant Maul provides a declaration stating that he does "not recall any interactions with Na during this time," did not believe that Na was in an unsafe cell, and does not recall the conditions of the cell during the time period. (Maul Decl., ECF No. 38-4 at 22). The Court concludes that Defendant Maul is entitled to summary judgment because Plaintiff has not provided any evidence to establish that he deliberately indifferent to the conditions of Plaintiff's cell. *See Farmer*, 511 U.S. at 847.

### E. Defendant McHenry

With respect to Defendant McHenry, Plaintiff states only that he notified McHenry of injuries he sustained after slipping in his cell. Plaintiff does not provide evidence that McHenry observed the conditions of his cell or that Plaintiff informed him of the conditions

of his cell. Defendant McHenry provides a declaration stating that he worked as a Control Deputy on April 5, 2015 and does not remember any conversation with Plaintiff. Defendant McHenry states that he did not walk the floor or observe the conditions of Plaintiff's cell. (ECF No. 38-4 at 19–20). The Court concludes that Defendant McHenry is entitled to summary judgment because Plaintiff has not provided any evidence to establish that he was deliberately indifferent to the conditions of Plaintiff's cell. *See Farmer*, 511 U.S. at 847.

The Court concludes that Defendants are entitled for summary judgment.

## V. MOTIONS TO APPOINT COUNSEL (ECF Nos. 37, 44)

The Report and Recommendation issued by the Magistrate Judge also addressed two motions for appointment of counsel filed by Plaintiff. (ECF Nos. 37, 44). The Magistrate Judge recommended that the Court grant the motions for appointment of counsel because Plaintiff had "successfully demonstrated that a genuine dispute of material fact exists for trial." (ECF No. 51 at 12). Defendants object and contend that "the facts and issues [in this case] remain simple" and that there are "no exceptional circumstances warranting the court's appointment of counsel." (ECF No. 52 at 10). The Court has reviewed the Report and Recommendation de novo and considered the the objections filed by Defendants.

Under 28 U.S.C. § 1915(e)(1), district courts have the discretion to request that an attorney represent indigent civil litigants upon a showing of exceptional circumstances. *Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). The Court has determined that each Defendant in this action is entitled to summary judgment. Accordingly, the Court concludes that appointment of counsel is not warranted. The Court declines to adopt the Report and Recommendation with respect to the motions to appoint counsel. Plaintiff's motions for appointment of counsel (ECF Nos. 37, 44) are denied.

## VI. CONCLUSION

IT IS HEREBY ORDERED that the Report and Recommendation issued by the Magistrate Judge (ECF No. 51) is not adopted. The motion for summary judgment filed by Defendants is GRANTED in its entirety. (ECF No. 38). The motions for appointment

of counsel filed by Plaintiff are DENIED (ECF No. 37, 44).  The Clerk of Court shall enter judgment for Defendants and against Plaintiff and close this case.

Dated:  March 8, 2018

Hon. William Q. Hayes
United States District Court